UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ALLA IOSIFOVNA SHUPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:14-cv-00317-JCN |
| | ) | |
| DAN AUSTIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION[1] ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

In this action, Plaintiff Alla Shuper alleges that Defendants Dan Austin and the Town of

Falmouth Police Department violated her civil rights in connection with an arrest on February 27,

2013.  The matter is before the Court on the parties' cross-motions for summary judgment.[2]

Following a review of the record, and after consideration of the parties' arguments, the Court

grants Defendants' motion (ECF No. 170), and denies Plaintiff's motion (ECF No. 164).

### BACKGROUND[3]

At all relevant times, Plaintiff suffered from a disability related to multiple diagnoses,

including diagnoses related to her mental health and cardiac health; she has also received multiple

---

[1] The parties have filed a consent authorizing the undersigned to conduct any and all proceedings and to enter a final order and judgment in this matter. (ECF No. 56.)

[2] Plaintiff's operative motion is her Amended Motion for Summary Judgment. (ECF No. 164.)

[3] Local Rule 56 requires that as part of the summary judgment practice, the parties file statements of material facts "as to which the moving party contends there is no genuine issue of material fact." D. Me. Loc. R. 56(b).  A party who opposes a motion for summary judgment must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by [Local Rule 56]." D. Me. Loc. R. 56(c)   Plaintiff's submissions do not comply with Local Rule 56.  As a consequence, the facts are derived primarily from Defendants' statement of material facts.  To the extent that Plaintiff's submissions have referenced the record such that the Court could locate the record evidence to which Plaintiff refers, the Court has considered the evidence.

emergency transports to the hospital between April 2011 and March 2013.  (Plaintiff's Statement of Material Facts, ¶¶ I – IX.)

Beginning in 2011, Plaintiff, then a resident of Falmouth, Maine, initiated a series of calls to the Falmouth Police Department frequently for non-police, non-emergency matters, including complaints about Governor LePage, the "stupidity" of people, her phone bill, landscaping rocks located outside her apartment window, and whether she should take her medication.  (Defendants' Statement of Material Facts (DSMF) ¶ 1, ECF No. 171.)  From October 2011 through February 2013, the Department had at least 35 contacts with Plaintiff, which contacts consisted of complaints made by or about her, but do not include every call she made to the Falmouth Police Department or 911 during that time period.  (*Id.* ¶ 2.)

Lt. John Kilbride of the Falmouth Police Department has historically been the point person at the Department to help manage non-emergency issues, inquiries, and complaints raised by Plaintiff.  (*Id.* ¶ 4.)  Lt. Kilbride has met repeatedly with Plaintiff at her request or upon her presentation at the station; he has also been in contact with Plaintiff's caseworker to help facilitate Plaintiff's interactions in the community.  (*Id.* ¶ 5.)

In response to complaints made by local businesses, the Falmouth Police Department issued various trespass notices and cease harassment notices to Plaintiff.  (*Id.* ¶ 6.)  After receiving complaints that Plaintiff was harassing employees of two businesses, on March 24, 2012, the Department issued criminal trespass notices to Plaintiff regarding the Falmouth Veterinary Hospital (March 24, 2012, April 5, 2012) and Staples (April 9, 2012).  (*Id.* ¶¶ 7, 9, 10.)  In addition, on or about March 25, 2012, the Department issued a harassment notice to Plaintiff with respect to Poison Control of Northern New England after receiving a complaint that Plaintiff was

repeatedly calling poison control when she did not have a poison control issue (including calling to complain about the government). (*Id.* ¶ 8.)

On March 25, 2012, Plaintiff contacted the Falmouth Police Department and reported an emergency. The dispatch log reflects that 911 was involved, that the dispatcher warned Plaintiff "to not call unless she has a true emergency," and that patrolman Lucas Hallett warned Plaintiff about reporting a false emergency. (*Id.* ¶¶ 11, 12.) Plaintiff did not have an emergency, only a question about her medication – whether she "'should … take her pill' when the pill bottle said 'take one daily.'" (*Id.* ¶ 12.) She was told not to call emergency services unless she had an emergency. (*Id.*)

On April 6, 2012, Falmouth Regional Emergency Communications notified the Falmouth Police Department that it had received numerous non-emergency calls from Plaintiff over a 32-hour period. (*Id.* ¶ 13.)

The dispatch log from April 6, 2012, states:

> Ms. Shuper has called regarding the functions of her hard drive advising that she can no longer contact Staples due to her harassment of this business. She was informed that this was not a police related issue. She then contacted the Falmouth Animal Clinic which prompted them to file harassment paperwork with this police department. After receiving this paperwork she contacted this department to complain about this paperwork. The harassment order was explained to her and she was told to call only if she had a police, fire, or medical emergency. She then called back again regarding the harassment order (this call came in the middle of this center's handling a crash with injury on the Interstate) and she was again told not to contact the center unless it was an emergency. On 04-06-2012 she contacted the emergency communications center to complain about AT&T and once again she was warned not to call the center unless it was an emergency. The police department will serve a[] harassment order on Ms. Shuper sometime this morning if she is located.

(*Id.* ¶ 14.)

Because of Plaintiff's frequent calls to the Falmouth Police Department, including to Falmouth Regional Emergency Communications, for non-emergency reasons, the Department

issued Plaintiff a harassment notice that directed Plaintiff not to call the Falmouth Police Department "unless for emergency reasons." (*Id.* ¶ 15.) The Department served the notice on Plaintiff on April 8, 2012. (*Id.* ¶ 16.)

On February 26, 2013, the Falmouth Police Department contacted Plaintiff after she called 911 and hung up. When the Department contacted Plaintiff, no emergency was reported. (*Id.* ¶ 17.) The following day (February 27), Plaintiff contacted the Falmouth Police Department and requested to speak with Lt. Kilbride. (*Id.* ¶ 18.) When she learned that Lt. Kilbride was unavailable, Plaintiff expressed dissatisfaction with Lt. Kilbride's unavailability and with the response from dispatch; she suggested that she would call 911. Plaintiff was warned not to call 911 without an emergency and was asked to identify the emergency, but did not report an emergency. (*Id.* ¶ 19.) Soon thereafter, Plaintiff called 911, which call was received by the emergency answering point at the Portland Police Department. (*Id.* ¶ 20.) The dispatcher from Portland Police Department then contacted the Falmouth Police Department to report the 911 hang up call from a Falmouth resident; the dispatcher determined that Plaintiff had been the caller. (*Id.* ¶ 21.)

Because the dispatcher was unable to determine the nature of Plaintiff's call, and because of the 911 hang up call, pursuant to protocol, the Falmouth Police dispatched Officer Austin to Plaintiff's apartment. (*Id.* ¶ 23.) Prior to arriving at her apartment, Office Austin, who was familiar with Plaintiff and her history of non-emergency 911 calls to the Falmouth Police Department, and was aware that Plaintiff had been warned not to misuse the 911 system, confirmed with dispatch that Plaintiff had been previously warned on multiple occasions not to call 911 without an emergency. (*Id.* ¶ 24.)

When Officer Austin arrived at Plaintiff's apartment, Plaintiff told him that she had two questions. She told him that she drove to Augusta earlier that day and it had taken her over 6 hours because she will not take the highway. (*Id.* ¶ 25.) In response to Officer Austin's inquiry as to whether Plaintiff understood the nature of an emergency, she made a gesture as if being stabbed and said "if I'm bleeding." (*Id.* ¶ 26.) Officer Austin then asked if there was an emergency or any danger, and she continued to talk about her trip to Augusta for a hearing. (*Id.* ¶ 27.)

Officer Austin determined that Plaintiff did not have an emergency, and prepared a summons for misuse of the 911 system. (*Id.* ¶ 28.) When Officer Austin presented the summons to Plaintiff for her signature, upon her inquiry, he explained the summons was for misuse of the 911 system. (*Id.* ¶ 30.) Plaintiff refused to sign the summons. (*Id.* ¶ 31.) Officer Austin again discussed with Plaintiff the nature of an emergency, and she again made a gesture of being stabbed and said "if someone throws a rock through my window." (*Id.* ¶ 32.)

Plaintiff refused to sign the summons because she believed she had done nothing wrong. (*Id.* ¶ 33.) Officer Austin attempted to explain to Plaintiff that signing the summons was not an admission of guilt, but she talked over him in a very loud voice. (*Id.* ¶ 34.) Officer Austin told Plaintiff that she could be arrested for refusing to sign the summons and she again refused to sign the summons. (*Id.* ¶ 35.) Plaintiff told Officer Austin that she called 911 because the Falmouth Police Department was not doing its job and she would continue to call 911 until the Department did its job. (*Id.* ¶ 36.)

Due to Plaintiff's non-compliance, Officer Austin requested a second officer, and Officer Mazziotti arrived at Plaintiff's apartment. (*Id.* ¶ 37.) While Plaintiff was sitting on her couch, Officer Austin again attempted to show Plaintiff the warning on the summons that the refusal to sign was a crime. (*Id.* ¶ 38.) Plaintiff continued to refuse to sign the summons. (*Id.* ¶ 39.) Officer

Mazziotti took out his handcuffs and Officers Austin and Mazziotti told Plaintiff she was under arrest due to her refusal to sign the summons; they asked her to stand up, but she refused. (*Id.* ¶ 40.) After the officers managed to handcuff Plaintiff, she refused to stand and walk to the door; upon reaching the door, she walked from the door of her apartment to the police vehicle under her own power. (*Id.* ¶ 41.)

Plaintiff was served with a citation for the misuse of the 911 system (25 M.R.S. § 2951), and was charged with the refusal to sign the summons, 17-A M.R.S. § 15-A(1). The criminal matter was resolved through a one-year filing subject to certain conditions. (*Id.* ¶ 42.)

### SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir.1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). If the court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, there exists a trial-worthy controversy and summary judgment must be denied as to the supported claims. Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").[4]

## DISCUSSION [5]

Following the Court's Order on Motion to Dismiss and on 28 U.S.C. § 1915(e)(2)(B)(ii) Review (ECF No. 48), Plaintiff's claims consist of the following: [6]

1.  A claim of wrongful arrest against Officer Dan Austin;

2.  A claim of excessive force against Officer Dan Austin;

3.  A disability discrimination claim under the Americans with Disabilities Act and the Maine Human Rights Act against the Falmouth Police Department, based on Officer Dan Austin's decision to arrest and detain Plaintiff on February 27, 2013; and

4.  A state law assault claim.[7]

## A.    Wrongful Arrest

Pursuant to 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought

---

[4] "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the Court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001).

[5] The Court construes the parties' competing motions to seek summary judgment on all of Plaintiff's claims. The Court, therefore, will discuss the merits of Plaintiff's claims and whether factual issues remain for trial, and will not specifically distinguish between the motions in its discussion.

[6] Plaintiff arguably attempts to introduce new claims in her summary judgment papers. To the extent that her summary judgment is construed to assert a motion to amend her complaint, the Court denies the motion. The deadline for amendment of the pleadings expired on March 16, 2015. (Scheduling Order, ECF No. 51.) The Court does not discern good cause for Plaintiff's attempt at this stage of the proceedings to amend further her complaint.

[7] The discussion of Plaintiff's civil rights claims focuses on federal law. Any state law claims of illegal arrest and excessive force are subject to the same analysis as the federal claims. *Richards v. Town of Eliot*, 2001 ME 132, ¶ 31, 780 A.2d 281, 292. Similarly, Plaintiff's "discrimination" claim under the Maine Human Rights Act is governed by the standard applied under the ADA. *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 312 (1st Cir. 2003).

against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999).

The record establishes that at all times, Officer Austin was acting under the color of state law.  The issue, therefore, is whether on the summary judgment record, Plaintiff could demonstrate that Officer Austin committed a constitutional deprivation.

The Fourth Amendment prohibits unreasonable searches and seizures, and provides that no warrant shall issue except on a showing of "probable cause, supported by oath or affirmation." U.S. Const. amend. IV.  An exception to the warrant requirement exists when an officer makes an arrest for a crime committed in the officer's presence. *Virginia v. Moore*, 128 S. Ct. 1598, 1607 (2008).  The fact that an officer might violate a state policy in the process of making an arrest – Plaintiff maintains that Officer Austin was supposed to call her crisis counselor and an interpreter – will not give rise to a fourth amendment violation if probable cause supports the arrest.  *Id.* at 1606.

Whether an officer had probable cause to arrest is assessed in light of the totality of the circumstances, and is evaluated in light of "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates,* 462 U.S. 213, 230 – 31 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)).  Probable

8

cause for an arrest exists if, "at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that [the individual] had committed or was committing a crime." *United States v. Torres-Maldonado*, 14 F.3d 95, 105 (1st Cir. 1994).

The record reveals that Officer Austin arrested Plaintiff for her failure to sign a summons, and not as the result of her alleged abuse of the 911 system. Maine law provides that "[a] law enforcement officer who has probable cause to believe that a crime has been or is being committed by a person may issue . . . a written summons to that person directing that person to appear in the appropriate trial court to answer the allegation that the person has committed the crime." 17-A M.R.S. § 15-A(1). "If the person refuses to sign the summons after having been ordered to do so by a law enforcement officer, the person commits a Class E crime." 17-A M.R.S. § 15-A(1).

The record unequivocally establishes that in Officer Austin's presence and in response to Officer Austin's request, Plaintiff repeatedly refused to sign the summons. Under the circumstances, a "prudent person" would conclude that Plaintiff was committing a crime. Officer Austin thus had probable cause to arrest Plaintiff for her refusal to sign the summons.

In addition, to the extent that Plaintiff contends Defendants must demonstrate that Officer Austin had probable cause to believe that Plaintiff misused the 911 system, the uncontroverted facts of record similarly establish probable cause. The crime of misuse of the E911 system prohibits an individual from making "repeated telephone calls to a public safety answering point by dialing 9-1-1 to make nonemergency reports or inquiries" in the absence of "reasonable cause … after having been forbidden to do so by a public safety answering point manager or administrator or a law enforcement officer." 25 M.R.S. § 2931(1)(A).

The undisputed record establishes that Plaintiff received warnings in March and April 2012.  In fact, the April warning was issued after Plaintiff placed numerous 911 calls to Falmouth Regional Emergency Communications.  Despite the warnings, on February 26 and 27, 2013, Plaintiff initiated non-emergency 911 calls.

When Officer Austin made his charging determination on February 27, 2013, he was entitled to rely on "the collective knowledge possessed by, and the aggregate information available to, all the officers" in his Department.  *United States v. Brown*, 621 F.3d 48, 57 (1st Cir. 2010).  The collective knowledge and aggregate information were sufficient for a prudent person to believe that Plaintiff had committed or was committing a crime.  Accordingly, even if Officer Austin were required to establish that he had probable cause to believe that Plaintiff misused the 911 system in order to justify Plaintiff's arrest for failure to sign the summons, the undisputed facts of record support a probable cause determination. [8]

## B.     Excessive Force

Plaintiff also contends that Officer Austin applied excessive force when he took her to the station.

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue,

---

[8] Regarding her 911 call history and her communications with Officer Austin on February 27, 2013, Plaintiff cites unsworn and hearsay documents that do not have evidentiary quality and/or that do not refute the facts presented by Defendants.  (E.g., Mar. 23, 2015, letter of Fischman, M.D., ECF No. 163-8.)  The Court acknowledges that Plaintiff has attached to her statement Defendants' answers to interrogatories and excerpts from her deposition of Officer Austin.  Plaintiff, however, has not asserted any facts in her statement that are supported by specific citation to either document or to any record evidence that would raise a genuine issue for trial.

whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations, quotation marks, and brackets omitted).

The record reflects that when Plaintiff refused to comply with the officers' directives, she was placed in handcuffs, walked to the cruiser, and kept in handcuffs during the transport. A review of the factual record thus reveals nothing unusual about the arrest, or the degree of force used to secure Plaintiff's compliance. A reasonable fact finder could not make an excessive force determination because the facts show nothing more than use of that "'degree of physical coercion' typically attendant to an arrest." *Pena-Borrero v. Estremeda*, 365 F.3d 7, 12 (1st Cir. 2004) (quoting *Graham*, 490 U.S. at 396.)

## C.    Disability Discrimination

In her amended complaint, Plaintiff alleged facts that plausibly stated a claim against Defendant Town of Falmouth Police Department under Title II of the Americans with Disabilities Act (ADA). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132.

> Courts have recognized at least two types of Title II claims applicable to arrests: (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

*Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014) (citing *Waller ex rel. Estate of Hunt v. City of Danville,* 556 F.3d 171, 174 (4th Cir. 2009); *Gohier v. Enright,* 186 F.3d 1216, 1220–21 (10th Cir. 1999)).

The summary judgment record contains no facts that suggest that Officer Austin misinterpreted Plaintiff's refusal to sign the summons. Plaintiff expressed that she did not intend to sign the summons because she had done nothing wrong. The record reflects that she did not misunderstand Officer Austin, nor does it suggest that her response might have been the product of her disability. In short, on this record, the basis of Officer Austin's decision to arrest Plaintiff cannot reasonably be construed as Officer Austin's misperception of the effects of Plaintiff's disability as criminal conduct. In addition, the record lacks any evidence of the need for an accommodation for Plaintiff's disability in connection with the arrest, and the routine manner of the arrest would not support a finding that Officer Austin subjected Plaintiff to a greater injury or indignity than any other arrestee. Defendant Town of Falmouth Police Department, therefore, is entitled to summary judgment on Plaintiff's claim under the Americans with Disabilities Act and on her claim under the Maine Human Rights Act.[9]

**D.     Assault**

Plaintiff describes Officer Austin's conduct as assault. In accordance with the Court's analysis of Plaintiff's claim for excessive force, because Officer Austin's conduct on February 27, 2013, was objectively reasonable and, therefore, within the scope of his discretion, Plaintiff's state law assault claim is precluded by the discretionary function immunity afforded by the Maine Tort Claims Act. *Richards v. Town of Eliot*, 2001 ME 132, ¶ 32, 780 A.2d 281, 292.

---

[9] As mentioned in note 7 above, Plaintiff's claim under the Maine Human Rights Act is governed by the standard applied under the ADA. *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 312 (1st Cir. 2003).

**CONCLUSION**

Based on the foregoing analysis, the Court grants Defendants' Motion for Summary Judgment (ECF No. 170) and denies Plaintiff's Amended Motion for Summary Judgment (ECF No. 164).

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 31st day of December, 2015.